PATLEX CORPORATION, et al., Appellants,

v.

Gerald J. MOSSINGHOFF, et al., Appellees.

Appeal No. 84–699.

United States Court of Appeals, Federal Circuit.

Aug. 20, 1985.

Alan J. Davis, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., argued for appellants. With him on the brief was Jeffrey S. Saltz.

John F. Pitrelli, Associate Solicitor, U.S. Patent & Trademark Office, Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Solicitor and John W. Dewhirst, Washington, D.C.

Edward M. Posner, Drinker, Biddle & Reath, Philadelphia, Pa., argued for appellee Control Laser. With him on the brief were Stewart Dalzell and Wilson M. Brown, III, Philadelphia, Pa.

Robert W. Duckworth, Duckworth, Allen, Dyer, & Pettis, P.A., of Orlando, Fla., of counsel.

Before MARKEY, Chief Judge, and FRIEDMAN and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

## ON PETITION FOR REHEARING

Appellants Patlex Corporation and Gordon Gould (herein referred to collectively as Gould) request rehearing of the court's decision of March 7, 1985. *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 225 USPQ 243 (Fed.Cir.1985). We deny the petition to the extent that it relates to our affirmance of the district court's decision that 35 U.S.C. §§ 301–307, applied retroactively, do not violate the Fifth Amendment, or the Seventh Amendment, or Article III of the Constitution; that 35 U.S.C. § 282 does not apply to reexamination; and that Manual of Patent Examining Procedure (MPEP) § 2286 does not violate statutory and constitutional restraints.

We grant the petition to the extent that it relates to Gould's challenge to certain other rules and regulations, *viz.* 37 C.F.R. §§ 1.26(c) and 1.530(a) and MPEP §§ 2240 and 2244. The district court's judgment

upholding these provisions, 585 F.Supp. 713, which we vacated on the premise that Gould lacked standing to challenge them, is reinstated. With respect to that judgment, we affirm in part and reverse in part.

## I.

■ Reference is made to the court's opinion at 758 F.2d 596–98, 225 USPQ 244–46, for the history of this case. At that time we affirmed the district court's decision on Gould's challenge to the constitutional and statutory validity of certain laws and regulations governing reexamination, which Gould had standing to challenge since he had protectible rights which would be affected by our decision. *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 152–54, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970); *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *see also* L. Tribe, *American Constitutional Law* 80 & n. 4 (1978).

Those regulations and rules on which the court declined to rule relate to the threshold determination by the Patent and Trademark Office (PTO) of whether to grant a request for reexamination. The Commissioner of Patents and Trademarks had advised the court that Gould had conceded that a substantial new question of patentability existed with respect to U.S. Patents Nos. 4,053,845 and 4,161,436, the two Gould patents then undergoing reexamination. This concession was purportedly made to perfect Gould's right to conduct a facial challenge to the reexamination statute prior to exhaustion of the administrative process governing his patents undergoing reexamination. On this basis we held that Gould lacked standing to challenge the legitimacy of the provisions governing the threshold determination, because a decision on their validity or invalidity could have no effect on Gould's situation. *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975) ("Petitioners must allege and show that they personally have been injured"); *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

By this petition Gould asserts that he made no concession before either the district court or the Patent and Trademark Office as to the correctness of this threshold determination, for any purpose. The Commissioner now agrees with Gould on this point. We have reviewed the record, and conclude that Gould is correct concerning the absence of such concession and of the need for it. We hold, therefore, that Gould has standing to challenge the lawfulness and constitutionality of 37 C.F.R. §§ 1.26(c) and 1.530(a) and MPEP §§ 2240 and 2244.

## II.

The PTO's initial determination whether to grant a request for reexamination is required by 35 U.S.C. § 303, which provides in part:

Within three months following the filing of a request for reexamination ... the Commissioner will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request....

■ Congress in performance of its legislative functions may leave it to administrative officials to establish rules within the prescribed limits of the statute. *United States v. Grimaud*, 220 U.S. 506, 517, 31 S.Ct. 480, 483, 55 L.Ed. 563 (1911). A statute that is valid on its face may nevertheless be administered in such a way that constitutional or statutory guarantees are violated. As summarized in L. Jaffee, *Judicial Control of Administrative Action* 321–22 (1965), the availability of judicial review is essential to the integrity of our system of government; it is "the necessary premise of legal validity". Judicial review of administrative action also serves to protect and preserve the separation of powers, a function clarified early in our nation's history. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803).

The challenged regulations and rules all relate to implementation of 35 U.S.C. § 303.

*37 C.F.R. § 1.530(a)*

In accordance with this regulation, the patentee is barred from communicating with the PTO during the three-month statutory period during which the PTO is required to decide whether any substantial new question of patentability is raised by a reexamination request. Gould emphasizes that the PTO must rely solely on the representations of the person who requested reexamination, without opportunity for any explanation or correction by the patentee. The reexamination statute does not prohibit such participation, but 37 C.F.R. § 1.530(a) does:

> [N]o statement or other response by the patent owner shall be filed prior to the determinations [of whether a substantial new question of patentability is raised].... If a premature statement or other response is filed by the patent owner it will not be acknowledged or considered in making the determination.

Gould observes that although administrative decision-making may be easier when only one side of an issue is heard, this has never been viewed as justification for silencing the other side.

Gould asserts that the deprivation of the opportunity to be heard at this critical stage violates due process. He contends that due process requires that he should have had at least a minimum opportunity to contribute information to the PTO before its determination was made. This objection is particularly cogent in the context of the PTO's "rule of doubt", required by MPEP §§ 2240 and 2244.

The Commissioner argues that § 1.530(a) was adopted in the interest of efficiency, in view of the three-month deadline set by Congress in 35 U.S.C. § 303. The PTO points out that the only purpose of this stage of the proceeding is to decide whether reexamination should go forward at all, not to decide how any new question of patentability ultimately will be answered. The Commissioner asserts that the PTO can not accommodate a "flurry of paper" at this stage.

■ Administrative convenience thus appears to be the sole basis for the rule. Although administrative convenience must be considered, "administrative convenience or even necessity cannot override the constitutional requirements of due process." *Cella v. United States*, 208 F.2d 783, 789 (7th Cir.1953), *cert. denied*, 347 U.S. 1016, 74 S.Ct. 864, 98 L.Ed. 1138 (1954); *see also Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio*, 301 U.S. 292, 304, 57 S.Ct. 724, 730, 81 L.Ed. 1093 (1937).

As stated in *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action". Gould argues that a patent examiner, in processing a hostile request for reexamination, may be unduly influenced by the uncontradicted assertions of the requester, which assertions might not withstand the illumination of even a brief response from the patentee. Gould argues that this threshold decision affects substantial property rights, and should not be made without full hearing, in compliance with the Fifth Amendment.

We consider only whether constitutional due process or the enabling statute requires patentee participation during the initial determination, not whether such participation would be useful or desirable.

### A.

Study of the genesis of the reexamination statute leaves no doubt that the major purpose of the threshold determination whether or not to reexamine is to provide a safeguard to the patent holder. As described by then PTO Commissioner Diamond:

> [The statute] carefully protects patent owners from reexamination proceedings brought for harassment or spite. The possibility of harassing patent holders is a classic criticism of some foreign reexa-

mination systems and we made sure it would not happen here.

*Industrial Innovation & Patent & Copyright Law Amendments: Hearings on H.R. 6933, 6934, 3806, & 214 Before the Subcomm. on Courts, Civil Liberties and the Administration of Justice of the House Comm. on the Judiciary,* 96th Cong., 2d Sess. 594 (1980). That is the only purpose of the procedure established by 35 U.S.C. § 303: "carefully" to protect holders of issued patents from being subjected to unwarranted reexaminations.

Gould argues that the PTO's administration negates this promise by taking an administrative shortcut not authorized by the reexamination statute and not intended by its proponents, thus encumbering Gould's issued patents while their fixed term continues to run.

The legislative history of 35 U.S.C. § 303 reflects congressional intent that the patentee not be required to participate during this threshold period. The Senate Report states:

> When the PTO receives a request for reexamination, the patent holder will be notified, but will not be required to do anything until a decision is made on whether or not a substantial new question of patentability has been raised. If the PTO decides that a question has been raised the patent owner will be allowed to reply to the challenge. Participation by third parties will be limited. The patent reexamination procedure thereby parallels the existing examination procedures.

S.Rep. No. 617, 96th Cong., 2d Sess. 16 (1980) (hereinafter cited as Senate Report). This history is not unambiguous on the precise point of whether the patentee was intended to be barred entirely from participation; but that is the plain purpose of 37 C.F.R. § 1.530(a).

The rulemaking history of § 1.530(a) shows that this concern was raised at public hearings, but was rejected by the PTO. The hearing report issued by the PTO states that "[s]everal persons [of nine who commented on this point] felt that the pat-

ent owner should be allowed to comment before the decision [whether to reexamine] under § 1.515 is made. Providing for such a comment would delay the decision under § 1.515 which must be made within three months...." 46 Fed.Reg. 29,176, 29,179 (1981).

Recognizing the closeness of the question, we affirm the district court's conclusion that § 1.530(a) does not violate the statutory framework generally contemplated by Congress; it facilitates the intended rapid determination of whether reexamination should proceed, and is in tune with the Congressional expectation that patent holders would not have to participate during this period.

### B.

Although we affirm that § 1.530(a) is within the statutory mandate, Gould has also raised constitutional issues of due process. While due process safeguards have long been applied to the procedures of administrative agencies, a specialized jurisprudence has developed under the ambit of the Fifth Amendment. The sort of provision represented by § 1.530(a), wherein an initial agency action affects property or personal rights, has been considered by courts in many contexts and has led to the formulation of a general test for due process in administrative procedures, summarized in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), as requiring evaluation of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903 (citation omitted).

Evaluating these factors, reference is made to our prior opinion for discussion of

the property interests affected by reexamination, 758 F.2d at 599–601, 225 USPQ at 246–48. Although Gould has postulated substantial commercial ramifications of an erroneous decision at the threshold stage, the effect of § 1.530(a) on Gould's property interests is fairly viewed as the temporary deprivation of full enjoyment of patent rights, for the period needed to correct an erroneous determination to reexamine his patents. The constitutional issue is not whether Gould's patents may be reexamined under a retroactive statute, as treated in our prior decision, but solely the impact of an erroneous decision to reexamine, made because the patentee was silenced during the initial determination.

The risk of examiner error due to lack of information—information that the patentee is able and anxious to contribute—relates only to the question "whether a substantial new question of patentability ... is raised", 35 U.S.C. § 303, not the answer to the question. In assessing the risk that an erroneous deprivation will ensue, we take notice that a patent examiner is charged with the experience appropriate to making independent determinations. PTO expertise is a factor to be given weight in considering the risk of error at this stage. *See Fahey v. Mallonee,* 332 U.S. 245, 253–54, 67 S.Ct. 1552, 1555–56, 91 L.Ed. 2030 (1947), wherein the Supreme Court was reassured by the knowledge that the challenged administrative determinations were made by disinterested experts. The PTO similarly carries a "heavy responsibility to be exercised with disinterestedness and restraint". *Id.* at 253–54, 67 S.Ct. at 1555–56.

As for the third *Mathews v. Eldridge* factor, the PTO states that it could not meet the three-month response period if patentee participation were allowed. We have no information on the cost of enlarged proceedings at this stage, nor who might bear the cost, but we do not consider such proceedings impossible of management, and we do not give this factor controlling weight in our review of the constitutional issue.

When considering the constitutional consequences of denying a hearing to those whose property rights are subject to an administrative process that may lead to deprivation of that property, the particular circumstances of the case may control not only entitlement to a hearing, but when during the process the hearing is held. *See, e.g., Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which held that provision of only a post-termination hearing to welfare recipients violated procedural due process, in furtherance of the nation's social policy and in recognition of the drastic consequences of an erroneous termination of welfare payments. *See also Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

Absent such special considerations, the general rule is that "[t]he demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective". *Opp Cotton Mills, Inc. v. Administrator,* 312 U.S. 126, 152–53, 61 S.Ct. 524, 536, 85 L.Ed. 624 (1941); *see Ewing v. Mytinger & Casselberry,* 339 U.S. 594, 598, 70 S.Ct. 870, 872, 94 L.Ed. 1088 (1950), wherein the Court stated "[a]t times a preliminary decision by an agency is a step in an administrative proceeding. We have repeatedly held that no hearing at the preliminary stage is required by due process so long as the requisite hearing is held before the final administrative order becomes effective." *Id.* (citation omitted).

Administrative regulation § 1.530(a) meets this general standard. The determination that a substantial new question of patentability exists is a preliminary decision. It is not a final determination, and it lacks those special circumstances of irreparable harm which have characterized exceptions to the general rule. As the Court stated in *Federal Trade Comm'n v. Standard Oil Co. of California,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), "[w]e need not decide what action a court of

appeals should take if it finds a cease-and-desist order [the final agency action] to be supported by substantial evidence but the complaint to have been issued without the requisite reason to believe [the threshold determination]. It suffices to hold that the possibility does not affect the application of the finality rule." *Id.* at 245, 101 S.Ct. at 496 (citation omitted).

The weight of authority supports the conclusion that the patentee's opportunity to participate after the threshold determination, and to appeal from final examiner and agency action, affords the patentee due process under the Fifth Amendment. *See Hannah v. Larche,* 363 U.S. 420, 440, 80 S.Ct. 1502, 1513, 4 L.Ed.2d 1307 (1960) ("requirements of due process frequently vary with the type of proceeding involved").

■ We conclude that the provision of 37 C.F.R. § 1.530(a) that bars threshold participation by the patent holder is within tolerable limits of the authority delegated to the PTO by Congress in enacting the reexamination statute, and that it does not violate the due process clause.

### *MPEP §§ 2240 and 2244*

■ The Manual of Patent Examining Procedure "is primarily a set of instructions to the examining corps of the Patent Office from the Commissioner". *In re Kaghan,* 387 F.2d 398, 401, 156 UPSQ 130, 132, 55 CCPA 844 (1967). It governs the details of PTO examination, is made available to the public, and describes procedures on which the public can rely. *Id.*

MPEP §§ 2240 and 2244 require the patent examiner, in implementation of 35 U.S.C. § 303, to resolve any doubt as to whether a substantial new question of patentability is raised in favor of granting the request for reexamination. The pertinent provisions are:

> MPEP § 2240. Where doubts exist, all questions should be resolved in favor of granting the request for reexamination. MPEP § 2244. Any question as to whether a substantial new question of patentability exists should be resolved in

favor of granting the request for reexamination.

Gould complains that a patentee is not only deprived of a hearing at the threshold stage under 37 C.F.R. § 1.530(a), but finds all threshold doubts resolved against him: reexamination will ensue whenever the PTO is doubtful about whether reexamination should ensue.

These administrative procedures are not contained in either the statute or the official regulations and apparently received no public hearing prior to adoption. In determining whether they are in reasonable execution of the statute, the legislative history of 35 U.S.C. § 303 is edifying. It expounds the opposite of the practice of MPEP §§ 2240 and 2244. Consider these statements by sponsors and supporters of the legislation: Senator Bayh reported that:

> [T]he Commissioner of Patents and Trademarks has the authority to order reexamination only in those cases which raise a substantial new question of patentability.

Senate Report at 16. Congressman Kastenmeier submitted a report from the House Committee on the Judiciary which affirmed that:

> This "substantial new question" requirement would protect patentees from having to respond to, or participate in unjustified reexaminations.

H.R.Rep. No. 1307 (part I), 96th Cong., 2d Sess. 7 (1980), U.S.Code Cong. & Admin. News 1980, pp. 6460, 6466. Robert Benson said on behalf of the American Bar Association that:

> [B]ecause of the following safeguards in the proposed reexamination procedure, it is unlikely that there will be any substantial amount of harassment ... The Commissioner must find that "a new question of patentability" has been created ... before ordering a reexamination.

*Patent and Trademark Law Amendments of 1980: Hearings on H.R. 6933 Before the Subcomm. of the House Comm. on Government Operations,* 96th Cong., 2d Sess. 178 (1980). He also noted that:

[T]he party requesting the reexamination would have the burden of convincing the Commissioner of Patents that a new question of patentability has been raised....

*Id.* at 176. The Senate Report observed at 17:

The Commissioner can dismiss the request at [the threshold stage] if no such new question is found to have been raised.

As discussed *supra* in connection with 37 C.F.R. § 1.530(a), Congress' major purpose in enacting § 303 was to protect patentees against doubtful reexaminations. The implementing regulations, on which public comment was invited, contain no reference to a "rule of doubt" in deciding whether to grant reexamination. This instruction appears only in the MPEP. We find no support for it in the statute or its legislative history.

We have discerned no other interpretation for MPEP §§ 2240 and 2244 than that which contradicts the clear intent of Congress. When Congress enacted 35 U.S.C. § 303 for the purpose of protecting the patentee, it could not have intended an implementation that would negate this protection. We can not endorse such a diversion of the statutory purpose.

[The courts] must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.

*Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981). The challenged rule is not "reasonably related to the purposes of the enabling legislation", *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973), quoting *Thorpe v. Housing Authority,* 393 U.S. 268, 280–81, 89 S.Ct. 518, 525–26, 21 L.Ed.2d 474 (1969).

We conclude that those portions of the MPEP which require the PTO to resolve doubt in the direction of granting the request for reexamination are contrary to the statutory mandate of 35 U.S.C. § 303, and void.

### *37 C.F.R. § 1.26(c)*

■ Gould also protests against the asserted prejudicial effect of 37 C.F.R. § 1.26(c), which provides as follows:

If the Commissioner decides not to institute a reexamination proceeding, a refund of $1,200.00 will be made to the requester of the proceeding. Reexamination requesters should indicate whether any refund should be made by check or by credit to a deposit account.

Gould argues that this procedure unlawfully weights the PTO's initial decision in favor of granting reexamination, because only if reexamination is granted will the PTO avoid refunding $1,200 of the $1,500 fee for reexamination. Gould cites as authority decisions finding abuses when fines assessed by a judge, *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), or by a mayor on behalf of the municipality, *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), inured to the benefit of those assessing the fines.

The Commissioner argues that the fee is an approximation of the actual cost of reexamination, that the refund reflects actual costs, that the PTO does not profit either way, and thus that the fee structure neither favors nor disfavors reexamination. The reexamination fee is not alleged by Gould to be unrelated to the cost of the activity. There is a clear distinction from the *Tumey* and *Ward* cases, since in those cases the fines were discretionary and were levied at the initiative of those benefiting from the income; in the case of the PTO the fees are set by Congress, and are paid by those members of the public who seek the benefits of the service.

In considering appellants' challenge to 37 C.F.R. § 1.26(c), we have placed this challenge in the larger scope of this entire cause. In itself § 1.26(c) does not present so "significant" an issue as to trigger the

constitutional and statutory safeguards which are the subject of Gould's action. *Boddie v. Connecticut*, 401 U.S. 371, 378–79, 91 S.Ct. 780, 786–87, 28 L.Ed.2d 113 (1971). It is nevertheless possible that the collective impact can too closely test the limits of acceptable practice. We have considered the full complement of appellants' objections to reexamination, as discussed herein and in our prior decision. 754 F.2d at 594, 225 USPQ at 243. Although there is merit in some of the concerns expressed by Gould, and we have not upheld all of the PTO procedures, we conclude that the balance does not constitute a fatal flaw in the principles guiding reexamination.

### III.

Gould's challenge to these rules and regulations is a facial one, in which he asks the court to declare the provisions void due to asserted unlawfulness. Gould brought this facial challenge because, as he acknowledges, he could not challenge at this stage the merits of the PTO's determination to proceed with reexamination. *See Federal Trade Comm'n v. Standard Oil Co. of California*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). Gould had already tried without success to persuade the Commissioner to refrain from reexamination due to pending litigation.

Gould asserts that invalidity of the administrative rules here challenged must result in vacation or stay of the ongoing reexamination of his patents, and asks that we remand the case for that purpose. Although we have held unlawful certain portions of MPEP §§ 2240 and 2244, vacation or stay of reexamination is not appropriate.

■ A party bringing a facial challenge to agency rules or regulations may not need, in certain circumstances, to await final agency action, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), or to exhaust administrative remedies, *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 296 (3d Cir.1982), in order to bring a facial challenge. But the general rule is that the requirements of finality and exhaustion are not waived with respect to "as applied" challenges, in which the litigant contests the application of the provision to his situation. This is in part due to judicial economy, and in part due to the need for a well developed record including appropriate findings of fact in order for a court to decide whether a particular provision had been applied to specific facts. *Federal Trade Comm'n v. Standard Oil Co. of California*, 449 U.S. at 239–245, 101 S.Ct. at 493–496.

■ Absent finality of the administrative proceeding, absent evidence that the "rule of doubt" was applied in this case, and recognizing the judicial and administrative economies inherent in the fact that Gould's patents have been in reexamination since 1982, we decline to remand for purposes of vacation or stay of reexamination of Gould's patents.

### IV.

In summary, we modify our prior decision and hold that Gould has standing to challenge the lawfulness and constitutionality of 37 C.F.R. §§ 1.26(c) and 1.530(a) and MPEP §§ 2240 and 2244. We affirm the district court's decision that 37 C.F.R. §§ 1.26(c) and 1.530(a) are lawful and constitutional. We reverse the district court's decision upholding those provisions of MPEP §§ 2240 and 2244 which impose a "rule of doubt" upon the threshold determination of whether a substantial new question of patentability is raised.

Costs on this petition are taxed to the Commissioner.

MODIFIED, AFFIRMED IN PART AND REVERSED IN PART.