990 F.2d 1237
 25 Fed.R.Serv.3d 1249, 26 U.S.P.Q.2d 1572
 BEECH AIRCRAFT CORPORATION and Paul J. Jonas,
Plaintiffs/Cross-Appellants,
v.
EDO CORPORATION, Defendant/Appellant,
and
Douglas B. Comer, Acting Commissioner of Patents and
Trademarks,[1] Defendant.
Nos. 92-1097, 92-1098, 92-1108 and 92-1109.
 United States Court of Appeals,
Federal Circuit.
 April 22, 1993.
Rehearing Denied May 19, 1993.
 
 Marvin D. Genzer, EDO Corp., College Point, NY, argued, for defendant/appellant. With him on the brief was Richard D. Greene, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS.
 Paul B. Swartz, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, argued, for plaintiffs/cross appellants. With him on the brief were Jeff Kennedy and Kathryn Gardner.
 Before RICH, ARCHER, and LOURIE, Circuit Judges.
 RICH, Circuit Judge.
 
 
 1
 EDO Corporation (EDO) appeals and Beech Aircraft Corporation (BEECH) and Paul J. Jonas cross-appeal the November 1, 1991 decision of the U.S. District Court for the District of Kansas in this consolidated suit, Beech Aircraft Corp. v. EDO Corp., 777 F.Supp. 884 (D.Kan.1991), on cross-motions for partial summary judgment. The district court issued its decision as two Judgments together with a consolidated Memorandum and Order. One Judgment is directed to a suit that BEECH/Jonas[2] originally filed in the U.S. District Court for the District of Columbia and later had transferred to Kansas (SUIT-1), and the other Judgment is directed to a suit that BEECH/Jonas filed in Kansas (SUIT-2). The Kansas court consolidated these two suits after SUIT-1 was transferred from the D.C. court.
 
 
 2
 BEECH/Jonas appeal that part of the district court's decision denying their motion that EDO be ordered by summary judgment to assign to BEECH the following: (1) U.S. Patent No. 4,782,864 (ABILDSKOV-1); (2) the pending divisional application of the application which led to the ABILDSKOV-1 patent (ABILDSKOV-2); and (3) all other property or information in EDO's possession that is the property of BEECH pursuant to the decision rendered in EDO Corp. v. Beech Aircraft Corp., 715 F.Supp. 990 (D.Kan.1988), aff'd, 911 F.2d 1447 (10th Cir.1990), a "previous litigation" between EDO and BEECH. Although EDO logically does not appeal the district court's refusal to order the requested assignment by summary judgment, EDO does appeal the district court's holding that BEECH is not precluded by res judicata, the compulsory counterclaim rule, or the applicable statute of limitations from asserting this assignment claim in the present suit.
 
 
 3
 EDO also appeals that part of the district court's decision vacating an interference decision rendered by the Board of Patent Appeals and Interferences (Board) of the U.S. Patent and Trademark Office (PTO)[3] on February 27, 1990. In that interference decision, the Board awarded priority to Abildskov for the common subject matter claimed in the ABILDSKOV-2 application, assigned to EDO, and U.S. Patent No. 4,671,470 (JONAS patent), assigned to BEECH.
 
 
 4
 Finally, EDO appeals the district court's holding that all of the remaining summary judgment motions are moot. EDO argues that the remaining motions ripened for review once the district court denied the cross-motions for partial summary judgment filed by EDO and BEECH/Jonas on the assignment claim.
 
 
 5
 In accordance with our comments below, we affirm the district court's denial of the motion for partial summary judgment filed by BEECH/Jonas on the assignment claim, on the alternative ground that BEECH is precluded by Rule 13(a) of the Federal Rules of Civil Procedure from asserting this claim in this suit. Accordingly, we also reverse the district court's denial of EDO's corresponding motion on the assignment issue and remand this case to the district court with instructions to grant EDO's motion based upon our Rule 13(a) holding. In addition, we reverse the district court's vacatur of the Board's interference decision and instruct the district court to consider the remaining motions for summary judgment.
 
 I. BACKGROUND
 
 6
 To understand the particular issues before this court, a review of how this case has come before us is needed.
 
 
 7
 A. Contractual Relationship Between BEECH and EDO[4]
 
 
 8
 The present controversy stems from a series of four research and development contracts which BEECH, the "Contractor," entered into with EDO[5] beginning in September of 1982. The contracts provided that EDO would design, develop, and construct a wing structure for the Starship, a new composite aircraft. Each of the contracts contained a section entitled "Title to Intellectual Property" which stated in pertinent part:
 
 
 9
 Any inventions, whether patentable or not, any trade secrets, and any technical information or data developed pursuant to the underlying research and/or manufacturing and tooling funded by the Contractor will be and will remain the exclusive property of the Contractor and will not be disclosed or made available at any time to any third part[y] without the written consent of the Contractor in advance.
 
 
 10
 The parties agree, however, that any invention, trade secret, or other technical information or data which is proprietary to Subcontractor prior to the signing of this subcontract and previous subcontracts with BEECH shall remain the property of the Subcontractor.[6]
 
 
 11
 In the previous litigation between the parties, the district court interpreted this section of the contracts as providing that all "patent and inventive rights" arising from the contracts would become the property of BEECH, exempting any documented procedures, designs, processes, and concepts which were unique to EDO and which were developed prior to the contracts. The first of the four contracts also required EDO to indicate in a final report to BEECH any such exempted procedures, designs, processes, or concepts, whereas the second, third, and fourth contracts did not contain such a provision.
 
 
 12
 In April of 1983, EDO presented BEECH with a design study report for the Starship main wing, which included a proposal that an "H" section be employed to attach spars to the wing skins. EDO did not indicate in that report that the "H" section concept was exempt from the contractual provisions bestowing upon BEECH "patent and inventive" rights to all concepts and designs developed pursuant to the contracts. BEECH accepted EDO's design for the Starship main wing, and, in late 1983, EDO geared up for production of the wing. Work proceeded until March 20, 1984, at which time BEECH notified EDO that it was terminating their contracts.
 
 B. Patents and Patent Application In Issue
 
 13
 On December 31, 1984, Abildskov, an EDO employee, filed the ABILDSKOV-1 patent application in the PTO designating EDO as assignee. The ABILDSKOV-1 patent issued on November 8, 1988. Both claims of the ABILDSKOV-1 patent are directed to a fabric joint for providing three-dimensional, structural support to intersecting structural members. The ABILDSKOV-1 patent describes these fabric joints as being useful in connecting a spar or rib to another structural component, such as the skin or covering of an aircraft wing.
 
 
 14
 On July 15, 1985, Paul J. Jonas, a BEECH employee, filed the application which the PTO ultimately issued as the JONAS patent on January 9, 1987. Jonas designated BEECH as assignee. The JONAS patent contains six claims directed to a method of joining aircraft sandwich skin panels to longitudinally extending frame elements and four claims directed to joints between sandwich skin panels of aircraft components and elongated structural frame elements.
 
 
 15
 On November 16, 1987, prior to issuance of the ABILDSKOV-1 patent, Abildskov filed the ABILDSKOV-2 divisional application. Abildskov filed an amendment in the ABILDSKOV-2 application on March 24, 1988, to provoke an interference with the JONAS patent. In this amendment, Abildskov added claims 23 and 24, which copied claims 7 and 10/7[7] of the JONAS patent, respectively. In response, the PTO declared an interference on March 8, 1989, in which: (1) Count 1 corresponded to claim 7 of the JONAS patent and claim 23 of the ABILDSKOV-2 application; and (2) Count 2 corresponded to claim 10/7 of the JONAS patent and claim 24 of the ABILDSKOV-2 application.[8] Jonas later moved the Board to add to the interference claims 9 and 13 of the ABILDSKOV-2 application as corresponding to Count 1, and claims 15 and 18-20 of the ABILDSKOV-2 application as corresponding to Count 2. The Board granted Jonas' motion, which went unopposed by Abildskov.[9]
 
 
 16
 On January 23, 1990, the Board issued to Jonas an order in the interference to show cause within twenty days as to why judgment should not be entered against him for failure to take testimony. Rather than filing a timely response to this show cause order, Jonas filed a petition with the PTO on February 21, 1990 requesting that the interference be stayed. Because Jonas failed to file a timely response to the show cause order, the Board decided priority of invention as to Counts 1 and 2 and rendered judgment in favor of Abildskov on February 27, 1990, pursuant to 37 C.F.R. § 1.652.
 
 
 17
 C. "Previous Litigation"
 
 
 18
 On April 1, 1985, EDO had filed suit in the U.S. District Court for the District of Kansas against BEECH, alleging, among other things, that BEECH had misappropriated trade secrets by BEECH's use of and procurement of a patent for the "H" section technology. EDO further requested a declaratory judgment that EDO owned the "H" section technology. Prior to the filing of its amended answer, BEECH became aware of the ABILDSKOV-1 application in taking the deposition of a former EDO employee, Mr. Graham. Nonetheless, BEECH did not file a compulsory counterclaim seeking assignment of this application.
 
 
 19
 In its decision dated October 21, 1988, EDO, 715 F.Supp. 990, the district court found in favor of BEECH on both of these issues. The district court held that the "H" section technology became the property of BEECH by virtue of the first 1982 contract between the parties and therefore, BEECH had not misappropriated any trade secrets belonging to EDO by its subsequent use of and procurement of a patent for this technology. EDO, 715 F.Supp. at 995-96.[10]
 
 
 20
 Two years later, on November 13, 1990, BEECH moved the district court to enforce the judgment in the previous litigation by ordering EDO to assign to BEECH both the ABILDSKOV-1 patent and the ABILDSKOV-2 application. The district court denied BEECH's request on January 28, 1991, stating in pertinent part:
 
 
 21
 [T]he court cannot grant the relief requested by Beech in its motion. First, the court notes that Beech neither requested nor received any affirmative relief such as assignment of a patent in the ["previous litigation"]. The court finds that, even if jurisdiction still existed to order EDO to assign its patent and patent applications to Beech, Beech's present request for relief is barred as untimely under Rule 59(e) of the Federal Rules of Civil Procedure, as well as by the applicable rules of pleading. Thus, Beech's request that the court order EDO to assign its patent and patent applications to Beech must be denied. [Emphasis ours.]
 
 
 22
 EDO Corp. v. Beech Aircraft Corp., 755 F.Supp. 985, 987 (D.Kan.1991).
 
 D. Proceedings Below
 
 23
 The relief that BEECH seeks in the consolidated suit now before us on appeal is the same relief that the district court refused to grant BEECH in BEECH's motion to enforce judgment in the previous litigation. The complex procedural manner in which this case has come before us will now be briefly summarized.
 
 
 24
 1. "SUIT-1" in D.C.
 
 
 25
 On June 28, 1990, prior to filing the motion to enforce judgment in the previous litigation discussed above, BEECH/Jonas filed suit in the U.S. District Court for the District of Columbia against EDO and the Commissioner of the PTO. Count I of the complaint requested that the court review the PTO's interference decision pursuant to 35 U.S.C. § 146, and reverse or vacate the decision accordingly. Count II sought relief under 35 U.S.C. § 291, alleging that the JONAS patent and the ABILDSKOV-1 patent were interfering patents. Count III sought relief under 35 U.S.C. § 256, requesting that the inventorship listed on the ABILDSKOV-1 patent be corrected to indicate that Jonas was the inventor or at least a co-inventor of the subject matter claimed therein. Count IV requested that the court order EDO to assign the ABILDSKOV-1 patent and the ABILDSKOV-2 application to BEECH. In addition to the foregoing, BEECH/Jonas also prayed that the court find the ABILDSKOV-1 patent to be invalid or unenforceable for, among other things, failing to comply with 35 U.S.C. §§ 102, 103, and 112.
 
 
 26
 On August 10, 1990, EDO filed an answer and counterclaim in SUIT-1, in both of which EDO argued that the PTO's interference decision should be affirmed. The PTO filed its answer, also requesting that the court affirm the interference decision, on August 14, 1992. The PTO also filed a motion for summary judgment in which it requested that the court dismiss Counts I and II as to both EDO and the PTO, arguing that the interference decision should be affirmed and that, due to the interference decision, there were no interfering patents. The PTO further asserted that, should the court determine that the patents did interfere, the court should dismiss Count II as to the Commissioner since he was not a necessary party to the action. The PTO similarly requested that the court dismiss Counts III and IV as to the PTO, arguing that the Commissioner also was not a necessary party to those counts.[11]
 
 
 27
 On August 20, 1990, BEECH/Jonas filed a cross-motion for partial summary judgment against EDO and the PTO as to Count I, arguing that the PTO's interference decision was void because the interference was actually a camouflaged "patent v. patent" interference over which the PTO did not have subject matter jurisdiction. EDO filed its own motion for partial summary judgment as to Counts I and II on August 31, 1990. Then, on September 19, 1990, EDO filed a motion to amend its answer and counterclaim, arguing among other things that BEECH was precluded by res judicata, the compulsory counterclaim rule, and the applicable statute of limitations from asserting an assignment claim in the present suit.
 
 
 28
 On October 2, 1990, BEECH/Jonas filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer SUIT-1 from D.C. to the U.S. District Court for the District of Kansas, which EDO and the PTO opposed on October 4, 1990 and October 11, 1990, respectively.
 
 2. "SUIT-2" in Kansas
 
 29
 While the above pleadings regarding summary judgment and transfer were pending before the U.S. District Court for the District of Columbia, BEECH filed suit in the U.S. District Court for the District of Kansas on October 16, 1990 against EDO, seeking relief similar to that sought in SUIT-1. BEECH requested in Count I that the court order EDO to assign to BEECH the ABILDSKOV-1 patent, the ABILDSKOV-2 application, and "all other property or information in its possession and which is in fact the 'property of Beech' pursuant to" the Kansas court's judgment in the previous litigation. In Count II, BEECH sought relief under 35 U.S.C. § 256, requesting that the court order the PTO to issue a certificate naming Jonas as the sole inventor or at least as a co-inventor of the subject matter claimed in the ABILDSKOV-2 application. In Count III, BEECH sought relief under 35 U.S.C. § 291, arguing that the JONAS patent and the ABILDSKOV-1 patents were interfering patents and that the ABILDSKOV-1 patent was invalid or unenforceable for, among other things, failing to comply with 35 U.S.C. §§ 102, 103, and 112.
 
 
 30
 EDO filed its answer in SUIT-2 on January 4, 1991, together with a counterclaim. On January 23, 1991, BEECH/Jonas[12] filed an answer to EDO's counterclaim.
 
 3. Consolidated Suit Now On Appeal
 
 31
 On February 15, 1991, the D.C. district court issued an Order and a Memorandum Opinion in SUIT-1 granting the motion by BEECH/Jonas to transfer SUIT-1 to Kansas. Beech Aircraft Corp. v. EDO Corp., 18 USPQ2d 1881, 1991 WL 133551 (D.D.C.1991).[13] Following the transfer, the Kansas district court consolidated SUIT-1 and SUIT-2, and then, on June 20, 1991, issued an order holding in abeyance the summary judgment motions pending from SUIT-1 until all motions for summary judgment for the consolidated suit were filed. On August 1, 1991, EDO and BEECH/Jonas filed cross-motions for partial summary judgment as to Count I in SUIT-2 and Count IV in SUIT-1, the assignment claim.[14]E. Decision Below
 
 
 32
 In both Judgments issued on November 1, 1991, the district court denied EDO's motion for partial summary judgment filed in the consolidated suit and granted-in-part and denied-in-part the motion for partial summary judgment filed by BEECH/Jonas. In the Judgment issued in SUIT-1, the court further ordered "all the remaining motions" to be moot, referring to the motions for partial summary judgment filed by EDO, the PTO, and BEECH/Jonas in SUIT-1 as to Counts I and II.[15]
 
 
 33
 In its Memorandum and Order, the district court held that BEECH was not precluded by res judicata, the compulsory counterclaim rule, or any applicable statute of limitations from requesting that EDO be ordered to assign the ABILDSKOV-1 patent and the ABILDSKOV-2 application to BEECH. The district court therefore denied EDO's motion for partial summary judgment on the assignment claim (Doc. 39).
 
 
 34
 The district court also denied, however, the motion for partial summary judgment filed by BEECH/Jonas on the assignment claim (Doc. 37), stating that it was "unable to grant" the relief requested. Regarding the ABILDSKOV-1 patent, the district court stated that "the full extent to which the EDO [ABILDSKOV-1] patent is inconsistent with this court's previous judgment has not been litigated and the court declines to overreach that judgment." Beech, 777 F.Supp. at 889. The district court thus found that summary judgment ordering the assignment of the ABILDSKOV-1 patent from EDO to BEECH would be improper.
 
 
 35
 The district court did not rely upon this same reasoning to deny that part of the motion requesting that EDO be ordered to assign the ABILDSKOV-2 application. Instead, the district court stated that, because of the Board's interference decision, the court had to revisit the judgment issued in the previous litigation. The court then interpreted the judgment in the previous litigation as establishing that BEECH "owned the technology" included in the JONAS patent, and thus, that BEECH implicitly "owned the patented technology including Claim Nos. 7 and 10/7" contained therein. Having reached this conclusion, the district court stated in pertinent part:
 
 
 36
 The court finds that, to the extent that the PTO found Beech was not entitled to a patent containing Claim Nos. 7 and 10/7, the judgment of the PTO is vacated. The court notes that it is not making any determination of inventorship or priority by its decision. Rather, this court is restating its previous ruling [in the previous litigation] regarding the contractual rights of the parties to the technology used by Beech in acquiring its patents. It is for the PTO to determine the effect of this court's judgment on EDO's patents. [Emphasis ours.]
 
 
 37
 Beech, 777 F.Supp. at 889-90. The district court apparently believed that vacating the Board's interference decision on "priority," i.e., who was the first inventor in law, somehow rendered the assignment issue, and the other summary judgment motions pending from SUIT-1 (Docs. 14, 17, and 25), moot as to the ABILDSKOV-2 application. Inventorship and ownership, however, are different questions.
 
 II. ANALYSIS
 A. Standard of Review
 
 38
 As discussed, this case comes to us from the district court's granting and denying of cross-motions for partial summary judgment. A motion for summary judgment is properly granted where
 
 
 39
 the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 
 40
 Fed.R.Civ.P. 56(c). In reviewing a grant or denial of summary judgment, we must make an independent determination as to whether the standards of Rule 56(c) have been met. Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1387, 21 USPQ2d 1383, 1386 (Fed.Cir.1992). In the present case, both parties filed motions for summary judgment on the assignment claim set forth in Count I of SUIT-2 and Count IV of SUIT-1. By doing so, both parties implicitly conceded that there are no material facts in issue regarding the assignment claim. Consequently, we need only decide the same questions of law decided by the district court in granting or denying summary judgment.[16] Under these circumstances, reversal is required if the district court "engaged in a faulty legal analysis in applying the law to the facts and a correct application of the law to those facts might bring a different result." Litton Indus. Prods., Inc. v. Solid State Sys. Corp., 755 F.2d 158, 164, 225 USPQ 34, 38 (Fed.Cir.1985).
 
 B. The Assignment Claim
 
 41
 At the outset, we note our confusion regarding the district court's statements in both of its Judgments that it was granting-in-part the motion for partial summary judgment that BEECH/Jonas filed in the consolidated suit (Doc. 37). This motion was directed solely to the assignment claim set forth in Count I of SUIT-2 and Count IV of Suit-1.[17] Because the district court unequivocally refused to order by summary judgment the requested assignment, the court did not grant in any way any part of this motion.[18]
 
 
 42
 In any event, for the reasons set forth below, we affirm the district court's refusal to order EDO to assign the ABILDSKOV-1 patent and the ABILDSKOV-2 application to BEECH. However, we base our affirmance on the alternative ground that the compulsory counterclaim rule set forth in Rule 13(a) of the Federal Rules of Civil Procedure[19] precludes BEECH's request for such an assignment in the present suit.[20] In accordance with this holding, we also reverse the district court's denial of EDO's corresponding motion for partial summary judgment on the assignment claim (Doc. 39), and remand this case to the district court with instructions to grant EDO's motion.
 
 
 43
 The district court held that BEECH's assignment claim was not a Rule 13(a) compulsory counterclaim in the previous litigation, because it did not mature until the PTO declared the interference between the JONAS patent and the ABILDSKOV-2 application. The district court stated in pertinent part that
 
 
 44
 [o]nly then did Beech have knowledge that EDO potentially could be declared the inventor of the portion of the technology to which Beech claimed ownership rights by virtue of the parties' previous contracts. [Emphasis ours.]
 
 
 45
 Beech, 777 F.Supp. at 889.
 
 
 46
 Surprisingly, BEECH's chief argument to this court is that BEECH's assignment claim is not based upon any of the contracts between the parties, but rather upon the judgment issued in the previous litigation, and thus, Rule 13(a) does not bar BEECH from asserting its assignment claim in the present suit. BEECH argues in the alternative, however, that, even if its assignment claim were based upon the contracts, this claim had not matured as of the date BEECH filed its answer in the previous litigation, because the PTO had not yet declared the interference. BEECH thus concludes that, under either theory, its assignment claim was not a compulsory counterclaim in the previous litigation.[21]
 
 
 47
 We disagree with both BEECH's arguments and the district court's legal analysis applying Rule 13(a) to the facts of this case.
 
 
 48
 In reviewing procedural issues that are not unique to patent law, we apply the law of the regional circuit where appeals from the particular district court would normally lie, here the Tenth Circuit. Atari, Inc. v. JS & A Group, Inc., 747 F.2d 1422, 1438-40, 223 USPQ 1074, 1086-87 (Fed.Cir.1984) (in banc). The Tenth Circuit has held that, for res judicata purposes, "a 'contract' is generally considered to be a 'transaction,' so that all claims of contractual breach not brought in an original action would be subject to a bar of claim preclusion, so long as the breaches antedated the original action." Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329, 1336 (10th Cir.1988). The Tenth Circuit's reasoning that a "contract" is a "transaction" applies equally well in the context of the Rule 13(a) issue presently before this court.
 
 
 49
 Despite BEECH's arguments to the contrary, it is undeniable that BEECH's assignment claim in this suit arises from the same contractual relationship between BEECH and EDO, i.e., transaction, that the district court reviewed in the previous litigation. Even the district court herein recognized that any ownership rights that BEECH ever possessed necessarily derived from the contracts between the parties. Accordingly, BEECH should have sought as a counterclaim in the previous litigation an assignment from EDO of all inventions and technology which BEECH believed it owned pursuant to the contracts between the parties, including the ABILDSKOV-1 application of which it was aware. BEECH failed, however, to request any affirmative relief during the previous litigation. Thus, Rule 13(a) precludes BEECH from belatedly asserting that claim in the present suit.
 
 
 50
 BEECH's arguments that its assignment claim in the present suit is based upon the judgment in the previous litigation and not upon the contracts between the parties are illogical and are merely attempts to circumvent Rule 13(a). In the previous litigation, the district court found that the first contract between the parties created ownership rights in BEECH, of the "H" section technology described in the design study report that EDO presented to BEECH in April of 1983, which incidentally shielded BEECH from EDO's claim that BEECH had misappropriated trade secrets by its use of and its procurement of a patent on that technology. The district court's judgment did not, itself, create any ownership rights for BEECH to assert against EDO. Furthermore, contrary to BEECH's arguments below, the district court's judgment did not itself constitute an assignment of any particular patent rights to BEECH.
 
 
 51
 Although the district court correctly found that any rights that BEECH might have had in the technology developed by EDO and claimed in the ABILDSKOV-1 patent and the ABILDSKOV-2 application necessarily derived from the contractual relationship between the parties, the district court erred in holding that BEECH's assignment claim did not mature until the PTO declared an interference between the JONAS patent and the ABILDSKOV-2 application. In Kansas, a cause of action for breach of contract accrues at the time of the breach, see Rupe v. Triton Oil & Gas Corp., 806 F.Supp. 1495, 1498 (D.Kan.1992), and therefore, BEECH's claim matured no later than when BEECH terminated the contracts and EDO notified BEECH that EDO intended to retain all intellectual property rights to the technology developed under the contracts. Clearly, this took place prior to BEECH's filing of its amended answer in the previous litigation.
 
 
 52
 Prior to commencement of the previous litigation, EDO informed BEECH in an April 16, 1984 letter that, because of the "sudden and unexpected termination" of the contracts, certain clauses in the second, third, and fourth contracts were no longer applicable. Of interest for this case is that EDO specifically asserted that the "Title to Intellectual Property" section in the contracts was no longer binding. In a letter dated April 25, 1984, BEECH took issue with EDO's suggestion and argued that the intellectual property section of the contracts was still "applicable and binding" on EDO. In a settlement proposal dated June 14, 1984, EDO again notified BEECH that EDO believed that the "Title to Intellectual Property" clause in the three terminated subcontracts, as well as "all other subcontracts Beech issued to [EDO] under the Wing Development Program for the Starship I Aircraft," were "no longer binding." The foregoing events, which clearly illustrate the existence of a dispute as to ownership rights in the technology developed pursuant to all four contracts between the parties, all took place prior to the commencement of the previous litigation.
 
 
 53
 In addition, EDO's claims against BEECH in the previous litigation for misappropriation of trade secrets and for a declaratory judgment as to ownership, by themselves, put BEECH on notice that EDO believed it retained ownership rights in the technology it developed under all four contracts. Furthermore, paragraph 6e in a pretrial order issued by the district court, based upon a stipulation by the parties, stated in pertinent part:
 
 
 54
 An actual and bona fide controversy exists as to the respective rights and obligations of the parties under the Subcontracts regarding title to intellectual property....
 
 
 55
 Clearly, the court as well as both parties recognized that there was a dispute as to who possessed ownership rights in the technology developed under the contracts.
 
 
 56
 In view of the foregoing, it is undeniable that any claim that BEECH had to any technology developed by EDO matured prior to BEECH's filing of its amended answer in the previous litigation. Accordingly, BEECH should have asserted, as a compulsory counterclaim in that litigation, a request that EDO be ordered to assign to BEECH any patents or patent applications based upon technology developed under the contracts, especially given that BEECH knew that EDO was pursuing patent protection on such technology.
 
 
 57
 Even if we had found them persuasive, the district court's reasoning and BEECH's arguments that BEECH's assignment claim did not mature until the PTO declared an interference only apply to the ABILDSKOV-2 application. Neither the district court nor BEECH has provided any explanation as to how BEECH's knowledge of the ABILDSKOV-2 application bears on BEECH's claim for assignment of the ABILDSKOV-1 patent, which BEECH was aware of during the previous litigation. BEECH clearly should have sought assignment of the ABILDSKOV-1 application, and any divisional or continuation applications thereof, during the previous litigation.
 
 
 58
 Notwithstanding the foregoing, we find confusing the district court's comments that BEECH's assignment claim did not mature until BEECH gained knowledge that "EDO potentially could be declared an inventor of the portion of the technology to which [BEECH] claimed ownership rights." First, knowledge of a breach is irrelevant in Kansas in determining when a cause of action accrues. See Rupe, 806 F.Supp. at 1498. Second, EDO could never have been declared an "inventor," as EDO was merely a corporate assignee and only natural persons can be "inventors." See 35 U.S.C. §§ 115-118. Abildskov is the named "inventor" on the ABILDSKOV-1 patent and the ABILDSKOV-2 application.
 
 
 59
 Even so, the PTO's declaration of an interference merely put BEECH on notice that Abildskov believed that he, not Jonas, was the first to invent the subject matter claimed in claims 7 and 10/7 of the JONAS patent. Thus, the PTO's declaration of an interference did not in any way add to the knowledge that BEECH possessed in 1984, when BEECH terminated its contracts with EDO and EDO notified BEECH of its position that it intended to retain all intellectual property rights to the technology developed pursuant to the contracts, or in 1985, when EDO commenced the previous litigation against BEECH.
 
 C. Vacatur of Interference Decision
 
 60
 EDO argues that the district court erred in vacating the PTO's interference decision. We agree.
 
 
 61
 As discussed, the district court stated in its decision that it was acting only upon the motions for partial summary judgment that the parties filed in the consolidated suit on August 1, 1991 (Docs. 37 and 39). Both of these motions were directed solely to BEECH's assignment claim in Count 1 of SUIT-2 and Count IV of SUIT-1. The district court further stated that the remaining summary judgment motions, i.e., the motions pending from SUIT-1, were moot. Accordingly, the district court's vacatur of the Board's interference decision was based solely upon BEECH's assignment claim and not upon any of the arguments set forth in the summary judgment motion filed by BEECH/Jonas in SUIT-1 as to Count I in SUIT-1.[22]
 
 
 62
 The district court clearly engaged in faulty legal analysis when it concluded that any ownership interests that BEECH possessed in the technology claimed in the ABILDSKOV-2 application could serve as a basis for vacating the PTO's interference decision. The district court apparently misunderstood not only the differences between ownership and inventorship, but also the function of the Board. The district court's statement that, in vacating the PTO's interference decision, it was merely "restating its previous ruling regarding the contractual rights of the parties to the technology used by Beech in acquiring its patents" illustrates this confusion.
 
 
 63
 It is elementary that inventorship and ownership are separate issues. An application for a patent must be made by or on behalf of the actual inventor or inventors[23] of the subject matter claimed therein. 35 U.S.C. §§ 111, 115-118; Kennedy v. Hazelton, 128 U.S. 667, 672, 9 S.Ct. 202, 203, 32 L.Ed. 576 (1888). Thus, inventorship is a question of who actually invented the subject matter claimed in a patent. Ownership, however, is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property. 35 U.S.C. § 261.
 
 
 64
 At the heart of any ownership analysis lies the question of who first invented the subject matter at issue, because the patent right initially vests in the inventor who may then, barring any restrictions to the contrary, transfer that right to another, and so forth. However, who ultimately possesses ownership rights in that subject matter has no bearing whatsoever on the question of who actually invented that subject matter. This holds especially true in the context of an interference proceeding in the PTO.
 
 
 65
 An interference is a proceeding which the Board conducts to determine questions of priority, i.e., who was the first to invent the common subject matter claimed in two or more applications or in one or more applications and an issued patent.[24] 35 U.S.C. § 135(a). In making such priority determinations, the Board has no interest whatsoever in who may or may not have ownership rights in the subject matter at issue, and therefore, such information has no bearing on the Board's ultimate decision regarding inventorship and priority.
 
 
 66
 In the present case, the only issue before the Board during the interference was whether Jonas or Abildskov was the first to invent the subject matter encompassed by Counts 1 and 2 of the interference. Due to Jonas' failure to respond timely to a show cause order, the Board awarded priority to Abildskov. The Board's action was nothing more than a default declaration that Abildskov was the first to invent the subject matter of the counts. The Board was not concerned at all with who owned the invention defined by the counts or covered by the resulting patent.
 
 
 67
 Accordingly, any ownership determinations that the district court might have made, regarding EDO's and BEECH's respective rights in the subject matter at issue in the interference, could not have served as a basis for vacating the Board's interference decision, a decision based solely on who was legally the first inventor, not owner, of the invention. We therefore reverse that part of the district court's decision vacating the Board's interference decision.
 
 
 68
 The district court apparently viewed EDO's actions in the PTO on behalf of Abildskov as attempts to sidestep the district court's decision in the previous litigation. However, the district court's previous decision did not deprive Abildskov of the right to seek patent protection for subject matter that he invented. By filing the ABILDSKOV-1 and ABILDSKOV-2 applications, EDO did no more than assert that Abildskov was the actual inventor of the subject matter claimed in each. Similarly, EDO's amendment in the ABILDSKOV-2 application copying claims 7 and 10/7 of the JONAS patent was nothing more than an assertion that Abildskov was the first to invent that subject matter. EDO's actions in the PTO were both proper and legal. It is BEECH's own misfortune that it failed to file a compulsory counterclaim asserting its ownership rights in the previous litigation and that it failed to respond to the Board's show cause order during the interference.
 
 CONCLUSION
 
 69
 For the foregoing reasons, we reverse the district court's vacatur of the Board's interference decision, affirm the district court's denial of the motion by BEECH/Jonas for summary judgment on the assignment claim, and remand this case to the district court with instructions to grant EDO's summary judgment motion (Doc. 39) as to Count I in SUIT-2 and Count IV in SUIT-1 and to consider the remaining summary judgment motions pending from SUIT-1.[25]
 
 III. COSTS
 
 70
 Each party to bear its own costs.
 
 
 71
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Although listed as a party defendant, the Commissioner has not taken part in this appeal
 
 
 [2]
 For purposes of this opinion, we refer to BEECH and Jonas collectively as "BEECH/Jonas."
 
 
 [3]
 For purposes of this opinion, "PTO" refers both to the U.S. Patent and Trademark Office and the Commissioner thereof
 
 
 [4]
 The facts to follow regarding the contractual relationship between BEECH and EDO are set forth in the decision rendered by the district court in the previous litigation, EDO, 715 F.Supp. 990, discussed more fully below
 
 
 [5]
 The contracts at issue were actually between BEECH and Fiber Science, Inc. (FSI), a wholly-owned subsidiary of EDO, which merged with and into EDO in November of 1983. As a result of the merger, EDO became the successor-in-interest to all contractual rights and obligations of FSI. For purposes of this opinion, EDO Corporation and FSI are both referred to as EDO
 
 
 [6]
 The quoted language, which is not found in the opinion of the district court in the previous litigation, is found in each of the second, third, and fourth contracts. Although we do not have before us, either as a part of the joint appendix or as part of the trial record below, a copy of the first contract, the district court in the previous litigation found that the first contract contained language similar to that quoted in the second, third, and fourth contracts. EDO, 715 F.Supp. at 991
 
 
 [7]
 Because the JONAS patent contains claims which depend from more than one other claim, this opinion employs the format "Claim At Issue/Claim from Which It Depends" to indicate which claimed embodiment is being discussed. For example, "10/7" refers to claim 10 as it depends from claim 7
 
 
 [8]
 The parties have not provided this court with a copy of the claims pending in the ABILDSKOV-2 application. Furthermore, although several documents found in the trial record provide a general idea of the scope of these claims, the trial record does not contain a complete copy of the claims
 
 
 [9]
 Neither party ever moved to have any of claims 10, 21, and 22 of the ABILDSKOV-2 application or any of claims 1-6, 8, 9/7, 9/8, 10/8, and 10/9 of the JONAS patent included as part of the interference, and the Board did not do so sua sponte. Claims 1 and 2 of the ABILDSKOV-1 patent also were never brought into the interference. Jonas did argue to the PTO, however, that claims 9, 13, 15, and 18-20 of the ABILDSKOV-2 application were unpatentable in view of claims 1 and 2 of the ABILDSKOV-1 patent and the rule against "double patenting." Abildskov responded by filing a terminal disclaimer
 
 
 [10]
 EDO appealed several issues involved in the previous litigation to the U.S. Court of Appeals for the Tenth Circuit, which affirmed the lower court's decision. EDO, 911 F.2d 1447. EDO did not appeal to the Tenth Circuit, however, the lower court's holdings regarding EDO's misappropriation of trade secrets claim or EDO's request for declaratory judgment on the ownership issue
 
 
 [11]
 The U.S. District Court for the District of Kansas ultimately dismissed Counts III and IV as to the PTO on August 20, 1991
 
 
 [12]
 At the time of filing, BEECH was the only plaintiff in SUIT-2. Jonas was added as a co-plaintiff in the amended complaint filed on December 13, 1990
 
 
 [13]
 EDO stated in its Notice of Appeal that it also was appealing the D.C. court's Memorandum Opinion transferring SUIT-1 to Kansas. EDO has failed, however, to argue this issue in this court. Therefore, even assuming that we could review this matter, we decline to do so. On December 27, 1991, the PTO also filed a Notice of Appeal with this court, seeking review of the D.C. court's transfer of SUIT-1 to Kansas, as well as review of the decision of the Kansas district court. On January 8, 1992, this court granted a motion by the PTO to dismiss the PTO's appeal
 
 
 [14]
 At no point during any of the foregoing was Abildskov, individually, made a party to the suit presently before us on appeal
 
 
 [15]
 Documents 14, 17, and 25 referred to by the Kansas district court in its Memorandum and Order are the motions for summary judgment filed in SUIT-1 by the PTO, BEECH/Jonas, and EDO, respectively, prior to transfer of SUIT-1 to Kansas; documents 37 and 39 are the motions for partial summary judgment filed by BEECH/Jonas and EDO, respectively, in the consolidated suit
 
 
 [16]
 However, we are not bound by the district court's holding that no material facts are in dispute. Intellicall, 952 F.2d at 1387, 21 USPQ2d at 1386. Similarly, we are not bound by the parties' implicit concession of the same
 
 
 [17]
 The district court specifically stated in its Memorandum and Order that the motions for summary judgment that it was ruling upon were documents 37 and 39 filed in the consolidated suit
 
 
 [18]
 Clearly, the district court's vacatur of the PTO's interference decision and the district court's holdings regarding the application of res judicata, the compulsory counterclaim rule, and the applicable statute of limitations to BEECH's assignment claim cannot be characterized as actions "granting-in-part" this motion
 
 
 [19]
 Rule 13(a) states in pertinent part:
 A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.
 
 
 [20]
 For the remainder of this opinion, we will refer only to BEECH when discussing the assignment claim, since it is BEECH alone who is requesting the assignment
 
 
 [21]
 Of interest, BEECH does not assert that its ownership rights arise from Jonas' participation, if any, as an inventor in the development of the technology in dispute. We note in this regard EDO's allegation that both Jonas admitted and BEECH stipulated that "Jonas did not invent one single individual element of the claims in the Beech patent." See EDO's Memorandum in Opposition to Beech's Motion for Summary Judgment filed in the U.S. District Court for the District of Columbia on August 5, 1991. Although not directly at issue here, we feel compelled to comment that a corporation's ownership rights in patentable subject matter do not entitle that corporation to file a patent application claiming that subject matter and listing as the inventor one of its own employees, when that employee did not actually invent any of the subject matter claimed therein
 
 
 [22]
 Count I in SUIT-1 alleged that the Board's interference decision was invalid for a variety of reasons, such as the alleged invalidity of certain interference regulations applied by the Board
 
 
 [23]
 As stated previously, only natural persons can be "inventors."
 
 
 [24]
 Of course, as part of its review, the Board also may determine questions of patentability
 
 
 [25]
 In this regard, we bring to the district court's attention Gerritsen v. Shirai, 979 F.2d 1524, 24 USPQ2d 1912 (Fed.Cir.1992), and Patlex Corp. v. Mossinghoff, 771 F.2d 480, 226 USPQ 985 (Fed.Cir.1985)