# United States Court of Appeals
# for the Federal Circuit

---

**ABBOTT LABORATORIES,**
*Movant-Appellee,*

**v.**

**CORDIS CORPORATION,**
*Respondent-Appellant.*

---

2012-1244

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 11-MC-0042, Judge Claude M. Hilton.

---

Decided: March 20, 2013

---

MICHAEL A. MORIN, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for movant-appellee. With him on the brief was ANDREW J. VANCE. Of counsel on the brief were JEFFREY A. LAMKEN and ROBERT K. KRY, Molo Lamken LLP, of Washington, DC. Of counsel was CORINNE LEE MILLER, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC.

JOSEPH LUCCI, Woodcock Washburn LLP, of Philadelphia, Pennsylvania, argued for the respondent-appellant.

With him on the brief was JOHN F. MURPHY. Of counsel on the brief was JOHN F. DUFFY, Fried, Frank, Harris, Shriver & Jacobson LLP, of Washington, DC. Of counsel was EUGENE N. HANSEN.

SAMANTHA L. CHAIFETZ, Attorney, Civil Division, United States Department of Justice, of Washington, DC, for Amicus Curiae. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, SCOTT R. MCINTOSH and MARK R. FREEMAN, Attorneys. Of counsel on the brief were BERNARD J. KNIGHT, JR., General Counsel, RAYMOND T. CHEN, Solicitor and Deputy General Counsel, THOMAS W. KRAUSE and FARHEENA Y. RASHEED, Associate Solicitors, United States Patent and Trademark Office, of Alexandria, Virginia.

_____

Before RADER, *Chief Judge,* DYK, and REYNA, *Circuit Judges.*

DYK, *Circuit Judge.*

Cordis Corporation appeals from the decision of the United States District Court for the Eastern District of Virginia granting Abbott Laboratories' motion to quash two subpoenas *duces tecum* issued pursuant to 35 U.S.C. § 24. We conclude that section 24 only empowers a district court to issue a subpoena for use in a "contested case," and that contested cases are limited to those in which the regulations of the United States Patent and Trademark Office ("PTO") authorize the parties to take depositions. Since the PTO does not provide for depositions in inter partes reexamination proceedings, such proceedings are not "contested cases" within the meaning of section 24, and subpoenas under section 24 are not available. We affirm.

BACKGROUND

Section 24 of title 35 of the U.S. Code provides that "[t]he clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent and Trademark Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify." 35 U.S.C. § 24. This appeal requires us to decide for the first time whether section 24 empowers a district court to issue a subpoena in an inter partes reexamination proceeding, in the absence of PTO regulations allowing parties to take testimony by deposition in such proceedings. In other words, we must decide whether such proceedings are "contested cases" within the meaning of the statute.

The origins of this dispute lie in September 2009, when Cordis sued Abbott and another company in the United States District Court for the District of New Jersey, alleging infringement of two patents held by Cordis for drug-eluting stents (U.S. Patent No. 6,746,773 ("the '773 patent") and U.S. Patent No. 7,591,844 ("the '844 patent")). The following year, the two defendants asked the PTO to initiate inter partes reexaminations of the two patents. The PTO agreed to reexamine the '844 patent in June 2010, and, on the same day, the examiner issued an initial office action rejecting all the claims of the patent as obvious. In August, Cordis submitted an expert affidavit asserting, among other facts, the existence of secondary considerations of nonobviousness, including that Abbott had copied its patent. Abbott's co-defendant responded the following month with an expert affidavit of its own, concluding that the '844 patent would have been obvious. In January 2011, the examiner issued a further "Non-Final Office Action," affirming the rejection of all the claims of the '844 patent. Among other findings, the examiner determined that Cordis had failed to present

evidence of copying.[1]

Around the same time that the examiner issued her second office action rejecting the '844 patent, a different examiner issued an initial action rejecting all the challenged claims of the '773 patent as obvious. In February and August 2011, Cordis and Abbott submitted dueling expert declarations on the obviousness of the '773 patent, addressing (among other matters) issues of copying. The reexamination of the '773 patent apparently remains pending before the examiner, while the reexamination of the '844 patent is on appeal before the Patent Trial and Appeal Board ("Board").[2]

In October 2011, Cordis sought subpoenas from the district court in Virginia under section 24. The court, pursuant to Cordis's request, issued two subpoenas *duces tecum* ordering Abbott to produce documents that Cordis believed would help establish the existence of copying and other secondary considerations with respect to the contested claims of the '844 and '773 patents.[3] The subpoenas were issued specifically for use in the pending PTO reexaminations of the two patents.

---

[1]    The examiner also found that the allegedly copied products had been on the market before the patent issued, and that Cordis had not shown a nexus between the claimed invention and the commercial success, industry praise, and unexpected results that had allegedly accrued to Abbott's stents.

[2]    After the examiners' initial determinations, the New Jersey district court stayed the infringement proceedings.

[3]    Cordis also obtained other subpoenas, for depositions of its adversaries' expert witnesses. Those subpoenas are not directly at issue in this appeal.

At the same time, Cordis filed petitions with the Director of the PTO, asking him to "clarif[y] . . . the [PTO's] rules as they relate to the service of a subpoena under 35 U.S.C. § 24 in inter partes reexaminations," and in particular to "confirm that [the PTO's] current rules impose no requirement that parties seeking to enforce subpoenas under § 24 must obtain the [PTO's] authorization." J.A. 538. In the alternative, Cordis asked the PTO to authorize such subpoenas if authorization was required.

The PTO denied Cordis's petitions, determining that section 24 subpoenas are "not permitted by the inter partes reexamination statute, or by any regulation governing inter partes reexamination proceedings." J.A. 1567. The PTO reasoned that because the reexamination statute requires inter partes reexaminations to be "'conducted according to the procedures established for initial examination,'" and because initial examination does not "provide for a discovery practice," inter partes reexaminations are not contested cases within the meaning of section 24. J.A. 1568 (quoting 35 U.S.C. § 314(a)). The PTO also concluded that allowing subpoenas in reexaminations would frustrate the congressional command to complete these proceedings with "'special dispatch.'" J.A. 1569 (quoting 35 U.S.C. § 314(c)). Finally, the PTO observed that it would be "anomalous" to allow discovery in inter partes reexaminations on the basis of section 24 "in isolation," when parties to indisputably "contested" proceedings such as interferences and inter partes reviews are constrained by specific statutory and regulatory frameworks for compelled discovery. J.A. 1571. In a separate lawsuit, Cordis has challenged the PTO's denial of its petitions as arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). The district court has stayed that proceeding pending the outcome of this appeal. *See Cordis Corp. v. Kappos*, No. 1:12-cv-75 (E.D. Va. Mar. 29, 2012).

Shortly after the PTO denied Cordis's petitions, a

magistrate judge of the district court in Virginia granted Abbott's motion to quash the subpoenas, concluding that the PTO's decision, "while not binding, [was] certainly persuasive," and that an inter partes reexamination is not a "contested case" within the meaning of section 24. J.A. 20-21. The district court affirmed the magistrate judge's order without opinion. *See Abbott Labs. v. Cordis Corp.*, No. 11-mc-42 (E.D. Va. Jan. 19, 2012).

Cordis timely appealed the district court's order quashing the subpoenas. We have jurisdiction under 28 U.S.C. § 1295(a)(1). *See Micro Motion Inc. v. Exac Corp.*, 876 F.2d 1574, 1576 (Fed. Cir. 1989). "We . . . review statutory interpretation . . . without deference." *AstraZeneca Pharm. LP v. Apotex Corp.*, 669 F.3d 1370, 1376 (Fed. Cir. 2012).

DISCUSSION

I

The question of whether 35 U.S.C. § 24 empowers a district court to issue a subpoena for use in an inter partes reexamination turns on whether an inter partes reexamination is a "contested case" within the meaning of section 24. The proper interpretation of section 24 is a question of first impression in this court. We construe the term "contested case," as used in section 24, as referring to a proceeding in which the PTO has provided for the taking of depositions for use in that proceeding.

A

The parties debate the precise attributes that make a proceeding "contested." According to Cordis, a "contested" proceeding is simply an adversarial proceeding, or one "in which one party 'contests' or challenges a particular position . . . adopted by another party." Cordis Br. 23. In support of this definition, Cordis cites a dictionary that defines the verb "to contest" as meaning "'to make a subject of litigation: dispute or resist by course of law,'" as

well as court decisions that elaborate on the meaning of "contested." Cordis Br. 23-25 (quoting *Webster's Third New International Dictionary of the English Language Unabridged* 492 (2002)). At oral argument, Cordis further argued that a "contested" proceeding is one in which the parties may introduce evidence.

Abbott, by contrast, asserts that "contested case" is "a term of art with a settled meaning" in patent law, referring to "adversarial proceedings . . . that [bear] the hallmarks of traditional civil litigation." Abbott Br. 38-39 (ellipsis in the original, quotation marks and emphasis omitted). These hallmarks, according to Abbott, include the rights "to file motions, compel testimony, compel document production, take depositions, cross-examine witnesses, . . . seek discovery," and "appear in person before" the adjudicator. Abbott Br. 40 (emphasis omitted). Abbott additionally suggests that a "contested" proceeding is one that is heard by a legally trained adjudicator.

Finally, the United States, arguing as amicus curiae in support of Abbott, asserts that "[the] PTO construes the phrase ['contested case'] to signify the small but important category of genuinely trial-like, adjudicative proceedings . . . of which the paradigmatic example is the interference," in contrast to "the examination-based proceedings that are the daily work of the agency and its corps of patent examiners." United States Br. 19.

We do not find the parties' dueling laundry lists of the attributes of a "contested case" to be useful in determining the meaning of section 24. Instead, we construe the provision in light of its plain text and relationship with adjacent provisions of title 35, its legislative history, and the interpretation given to it by other courts.

B

Section 24 makes subpoenas available from "[t]he clerk of any United States court for the district wherein

testimony is to be taken for use in any contested case in the Patent and Trademark Office." 35 U.S.C. § 24. A "contested case," in this context, must therefore be a proceeding for which "testimony [may] be taken for use" before the PTO. *Id.*

The relationship between section 24 and the immediately preceding section of title 35 shows that Congress has entrusted to the PTO the power to decide by regulation which proceedings require "testimony . . . to be taken for use."[4] Section 23 of title 35 allows the Director of the PTO to "establish rules for taking . . . depositions required in cases in the [PTO]," and allows "[a]ny officer authorized by law to take depositions to be used in [state or federal courts to] take such . . . depositions." 35 U.S.C. § 23.[5]

Sections 23 and 24 originated as a single sentence in section 1 of the Patent Act of 1861, which provided:

> That the Commissioner of Patents may establish rules for taking . . . depositions required in cases pending in the Patent Office, and [that] such . . . depositions may be taken before any justice of the peace, or other officer authorized by law to take depositions to be used in the courts of the United States, or in the State courts . . . ; and [that] in

---

[4]    "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988); *see also Sale v. Haitian Ctrs. Council*, 509 U.S. 155, 171-74 (1993) (construing a statutory provision in light of its relationship with other parts of the same statute).

[5]    Section 23 differs from section 24 one respect, in that it gives the Director of the PTO the authority to regulate the use of affidavits, as well as depositions. *See* 35 U.S.C. § 23.

> any contested case pending in the Patent Office it shall be lawful for the clerk of any court of the United States for any district or Territory, and he is hereby required, upon the application of any party to such contested case, . . . to issue sub-pœnas for any witnesses residing or being within the said district or Territory, commanding such witnesses to appear and testify . . . .

*See* Patent Act of 1861, ch. 88, § 1, 12 Stat. 246, 246.[6]

The Patent Act of 1870 divided section 1 into three sections and revised its language. *See* Patent Act of 1870, ch. 230, §§ 43-45, 16 Stat. 198, 204. In 1873, Congress further subdivided the provision, leaving it spread over four consecutive sections of the Revised Statutes. *See* Rev. Stat. §§ 4905-08, *enacted by* Act of December 1, 1873, 18 Stat. 1, 957-58. The Patent Act of 1952 merged three of the four sections and updated their language, creating the provisions that have come down to us, with subsequent amendments, as sections 23 and 24. *See* Patent Act of 1952, Pub. L. No. 82-593, §§ 23-24, 66 Stat. 792, 795. Nothing in this subsequent history reveals an intent on the part of Congress to sever the relationship between the two provisions. The "contested case[s]" of section 24 are, as they were at the time of the statute's enactment, those cases for which the Director of the PTO has "establish[ed] *rules for taking . . . depositions*" by compulsion. *See* 35 U.S.C. § 23 (emphasis added). As the United States argues, section 24 thus "authorizes district courts to lend their coercive powers to [the] PTO," which maintains "plenary authority" over the production of evidence

---

[6]    Section 1 replaced an earlier provision authorizing the Commissioner of Patents "to make all such regulations in respect to the taking of evidence to be used in contested cases before him, as may be just and reasonable." *See* Patent Act of 1839, ch. 88, § 12, 5 Stat. 353, 355.

through section 23. *See* United States Br. 9, 28.

C

The legislative history of section 24 also supports this reading. Sections 23 and 24 were enacted in 1861 to help the PTO secure needed testimony from recalcitrant fact witnesses. In the years before the enactment of these provisions, the PTO's rules allowed depositions to be taken in interferences and patent term extension proceedings, but offered no means for compelling the attendance of deponents. *See* United States Patent Office, *Rules and Directions for Proceedings in the Patent Office* §§ 93-98 (1854) ("*1854 Rules*"); *see also* United States Patent Office, *Rules and Directions for Proceedings in the Patent Office* §§ 86-91 (1859) ("*1859 Rules*").[7]

An 1857 report by the Commissioner of Patents drew Congress's attention to the problems created by the inability to compel testimony in these proceedings:

---

[7]    For example, the rules provided that "before the deposition of a witness [may] be taken . . . , notice should be given to the opposite party of the time and place when and where such deposition . . . will be taken; so that the opposite party . . . shall have full opportunity to cross-examine the witness"; that "[t]he magistrate [taking the deposition] must append to the deposition his certificate, stating the time and place at which it was taken, the names of the witnesses, the administration of the oath, at whose request the testimony was taken, the occasion upon which it is intended to be used, the names of the adverse parties . . . and whether they were present"; and that "[t]he magistrate must . . . seal up the deposition when completed, and endorse upon the envelope a certificate." *1854 Rules*, *supra*, §§ 93.2, 96, 98. The rules also provided a sample form "recommended for observance in the taking of depositions." *Id.* § 98.

In applications for the extension of patents and in interference cases a wide range of inquiry into matters of fact is often essential to the ends of justice. *The existing laws furnish no means for compelling the attendance of witnesses*, nor for obliging them to testify upon such issues. The interests bound up with these investigations are frequently of the greatest magnitude; and, as a consequence, *refractory or mercenary men, availing themselves of this omission in the law, have refused to appear or give their depositions, except upon the payment of the most exorbitant sums by parties claiming the testimony.* Cases of this character, while working the most cruel hardship to individuals, have tended to bring the administration of the government into discredit, if not into contempt. *No reason is perceived why the process of subpœna, freely allowed to all litigating their interests in the courts of the country, shall be withheld from the parties to these important and complicated controversies.*

1 United States Patent Office, *Report of the Commissioner of Patents for the Year 1857: Arts and Manufactures*, S. Exec. Doc. No. 35-30, at 7 (1858) (emphases added). A commercial guide to patent practice published shortly before the section's enactment echoes the Commissioner's views, warning inventors and their agents that: "The taking of evidence in interference cases is a sort of private inquest. It is not necessarily a Court proceeding. Subpœnas cannot be issued nor compulsory process employed to cause parties to testify." *Patent Laws of the United States, Together with Rules and Proceedings in the Patent Office*, 69 (New York, Munn & Co., ca. 1860).[8]

---

[8]     The regulations governing the use of depositions in interferences also applied to patent term extension proceedings—the other class of contested cases discussed

Congress proved sympathetic to the Commissioner's concerns. In 1857, the House Committee on Patents reported a bill designed to "remed[y]" the "defect in the present law" created by the absence of a means for "compel[ling] a witness to testify" or for obtaining "evidence . . . that is not volunteered" in proceedings before the PTO. H.R. Rep. No. 34-98, at 1 (1857). In the following Congress, the same committee reported a similar bill, designed to "remove" the "[s]erious difficulties" that arose "in pursuing the regular and necessary investigations" of the PTO due to "a defect of authority in commanding the attendance of witnesses." H.R. Rep. No. 35-178, at 2 (1858). The proposed bill, the committee asserted, would "relieve[] the [PTO] from this omission, and enable[] litigants to have the benefit of testimony, and, at the same time, carefully guard[] and protect[] the rights of witnesses and all parties." *Id.* The PTO appears to have drafted these bills. *See* Cong. Globe, 36th Cong., 1st Sess. 1646 (1860) (statement of Sen. Bigler).

The Patent Act of 1861 was enacted in the waning days of the Thirty-Sixth Congress. The chair of the Senate Committee on Patents assured his colleagues that the law would save parties from the need "to virtually bribe witnesses" in order to secure their attendance, preventing witnesses from "embarrass[ing] the operations" of the PTO and imposing "unnecessary expense" on parties. Cong. Globe, 36th Cong., 1st Sess. 1731 (1860) (statement of Sen. Bigler). The chair stated that the provision was universally supported by "inventors," their "agents," and the PTO, and that he had "never heard any diversity of opinion" regarding its wisdom. *Id.* And indeed, through ten months of subsequent debate over the bill as a whole,

---

in the Commissioner's report to Congress. *See 1859 Rules*, *supra*, § 55; *see also* United States Patent Office, *Rules and Directions for Proceedings in the Patent Office* § 56 (1861).

section 1 of the bill never engendered any controversy or amendments. This history demonstrates that section 24 was intended to help the PTO secure deposition testimony it needed by compulsory process, and not to allow parties to secure evidence that the PTO did not consider necessary.

D

The interpretation given to section 24 by the regional courts of appeal just prior to the creation of this court further confirms that section 24 is the handmaiden of section 23. While patent law decisions of the regional circuits do not bind us, *see Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1372 (Fed. Cir. 2001), we may consider them as persuasive authority, *see Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023 (Fed. Cir. 1989).

At one time, "[t]he prevailing interpretation of 35 U.S.C. § 24 [was] that it authorize[d] district courts to grant discovery beyond that permitted by [PTO] discovery rules and rules of admissibility." *See Brown v. Braddick*, 595 F.2d 961, 966 (5th Cir. 1979). In one typical decision, the Third Circuit held that the insertion into section 24 in 1952 of a reference to the Federal Rules of Civil Procedure revealed an intent to make "broad discovery . . . available" in contested cases. *In re Natta*, 388 F.2d 215, 217 (3d Cir. 1968), *overruled by Frilette v. Kimberlin*, 508 F.2d 205 (3d Cir. 1974) (en banc).

The tide began to turn in 1974, when the Third Circuit reversed its earlier decision. *See Frilette*, 508 F.2d 205. The court noted the "anomaly" of "permitting discovery in the district court while matters are still pending before an administrative agency," and concluded that this anomaly was inconsistent with the courts' proper role of "co-operatively complementing the [PTO]" in managing its proceedings. *Id.* at 208, 210 (footnote and quotation marks omitted). The following year, the First Circuit followed

the Third Circuit's lead. After observing that "[h]istorically section 24 developed to provide for the issuance of subpoenas to compel testimony and evidence required in . . . interferences," the court held that section 24 only allows courts to issue subpoenas to "aid in [PTO-]authorized discovery, [or] to obtain testimony and evidence for use in [an interference] proceeding in progress." *Sheehan v. Doyle*, 513 F.2d 895, 896, 899 (1st Cir. 1975).[9] The court concluded that "section 24 is simply a provision giving teeth, through the courts' subpoena powers, to authority conferred upon the Commissioner of Patents" to regulate PTO proceedings. *Id.* at 898.[10] Like the First and Third Circuits, we conclude that section 24 is designed to allow the courts to render assistance to the PTO.

For all these reasons, we conclude that section 24 only empowers district courts to issue subpoenas in proceedings for which the PTO has authorized parties to present evidence by means of depositions.[11]

---

[9] The PTO's rules at the time, like its present rules, explicitly provided for the use of depositions in interferences and related proceedings. *See* 37 C.F.R. § 1.272 (1972).

[10] In *Brown*, the Fifth Circuit appeared to approve the views of the First and Third Circuits in *Sheehan* and *Frilette*. *See* 595 F.2d at 965-67.

[11] Although section 24 only speaks explicitly of the courts' power to "issue a subpoena . . . commanding [a witness] to appear and testify," 35 U.S.C. § 24, the PTO apparently construes the statute as providing for subpoenas *duces tecum*, such as the subpoenas at issue in this appeal. *See* 37 C.F.R. §§ 41.156(a), 42.52(a) (regulating the use of subpoenas to "compel testimony or *production of documents or things*" (emphasis added)).

E

Congress's most recent amendment to the Patent Act further demonstrates that Congress intended for subpoenas under section 24 to be made available in those proceedings in which depositions are relied upon by the PTO. In 2011, Congress replaced inter partes reexamination with a new proceeding called inter partes review. *See* Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, § 6(a), 125 Stat. 284, 299-304 (2011), *to be codified at* 35 U.S.C. §§ 311-319 (2013). The purpose of this reform was to "convert[] inter partes reexamination from an examinational to an adjudicative proceeding," and one of its touted "improvements" over the former proceeding is to allow the limited use of depositions. H.R. Rep. No. 112-98, pt. 1, at 46-47 (2011); *see* AIA § 6(a), 125 Stat. at 302, *to be codified at* § 316(a)(5)(A). In particular, Congress provided for depositions of affiants in the proceeding, and also authorized parties to "seek such discovery as the Patent Office determines is otherwise necessary in the interest of justice." *See* H.R. Rep. No. 112-98, pt. 1, at 47. In the course of implementing these mandates, the PTO has recognized that the AIA authorizes parties to seek section 24 subpoenas in the new proceedings. *See* 37 C.F.R. §§ 42.52-.53 (2013); *see also Office Patent Trial Practice Guide*, 77 Fed. Reg. 48,756, 48,761 (Aug. 14, 2012). Congress's actions in creating these inter partes review proceedings thus demonstrate that depositions and section 24 subpoenas go hand in hand.

II

We turn to the question of whether the PTO's regulations allow parties to take depositions in inter partes reexaminations.

The PTO regulations make no provision for the taking of depositions in proceedings before examiners. Depositions are allowed only in matters before the Board. The PTO's regulations for inter partes reexaminations make

no provision for either party to take depositions. *See* 37 C.F.R. §§ 1.902-.997 (2005). The PTO's regulations indeed specifically exclude appeals of inter partes reexaminations (the only stage of the reexamination occurring before the Board) from the category of Board proceedings in which depositions are allowed by defining such proceedings as not being "contested cases." *See* 37 C.F.R. § 41.2 (2005); *Rules of Practice for Trials before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions; Final Rule*, 77 Fed. Reg. 48,612, 48,616 (Aug. 14, 2012) ("*2012 Rules*"). The PTO also has stated that "[t]he existence of a contested case [within the meaning of 37 C.F.R. § 41.2] is a predicate for authorizing a subpoena under 35 U.S.C.[ §] 24." *See 2012 Rules*, 77 Fed. Reg. at 48,616.

The only PTO regulations providing for depositions in patent proceedings apply exclusively to interferences, derivation proceedings, and the new Board proceedings created by the AIA. *See* 37 C.F.R. §§ 41.1(a), 41.157 (2005) (interferences); 37 C.F.R. §§ 42.1(a), 42.2, 42.53 (2013) (derivation proceedings and proceedings under the AIA). Each of these regulations, moreover, is accompanied by a regulation explicitly allowing the parties to seek section 24 subpoenas in the covered proceedings, reinforcing the connection between the availability of depositions and compelled production. *See* 37 C.F.R. § 41.156 (2005); 37 C.F.R. § 42.52 (2013).[12]

---

[12]    Section 24 subpoenas are explicitly permitted in two other types of PTO proceedings, as well: trademark proceedings and disciplinary proceedings. *See* 37 C.F.R. §§ 2.120(3)(b),(j)(2), 11.38. Both types of proceedings allow the use of depositions. *See* 37 C.F.R. §§ 11.50-.51, 2.123-.124. Another type of proceeding, public use proceedings, follows the rules governing the use of testimony in interferences, including the use of depositions. *See* 37 C.F.R. § 1.292; MPEP § 720.04 (8th ed. Rev. 9, Aug. 2012). The

The PTO's regulations thus do not permit parties to take depositions in inter partes reexaminations, and section 24 subpoenas are not available in such proceedings.

## III

Finally, Cordis urges us to construe section 24 as allowing subpoenas in these reexaminations in order to avoid "serious constitutional concerns" regarding due process. *See* Cordis Br. 38 (quotation marks omitted). *See generally Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *SKF USA Inc. v. USCBP*, 556 F.3d 1337, 1349-50 (Fed. Cir. 2009).

While a patent is a property right protected by the Due Process Clause, *see Fla. Prepaid Postsec. Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 642 (1999); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir. 1985), due process requires an individualized analysis of "the particular circumstances of the case," *see Patlex Corp. v. Mossinghoff* ("*Patlex II*"), 771 F.2d 480, 485 (Fed. Cir. 1985).

The indispensable ingredients of due process are notice and an opportunity to be heard by a disinterested decision-maker. *See Caperton v. A.T. Massey Coal Co.*, 556

---

parties dispute whether section 24 subpoenas are available in public use proceedings, and we need not decide this question.

The PTO requires a party to obtain authorization from the Board prior to seeking a section 24 subpoena in a patent proceeding. *See* 37 C.F.R. §§ 41.156, 42.52; *see also id.* § 11.38. This requirement was first introduced in 1985. *See* 37 C.F.R. § 1.671(g) (1985); *Patent Interference Proceedings*, 49 Fed. Reg. 48,416, 48,417 (Dec. 12, 1984). This requirement for individual authorization is not before us.

U.S. 868, 876-81 (2009); *Lachance v. Erickson*, 522 U.S. 262, 266 (1998); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13 (1978); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). There is no dispute that inter partes reexamination provides the patent owner with notice and an opportunity to be heard by a disinterested decision-maker. *See* 35 U.S.C. §§ 311(c), 312(b), 314(a),(b); *see also Patlex II*, 771 F.2d at 485-86 (noting that ex parte reex-aminations are conducted by "disinterested experts," and concluding that "the patentee's opportunity to participate after the [decision to initiate a reexamination], and to appeal . . . , affords the patentee due process").

Given that the basic rights of notice and an opportuni-ty to be heard have been afforded, determining what additional procedures are guaranteed by due process requires balancing the various interests at stake. *See Mathews*, 424 U.S. at 334-35. This balancing must take into account the fact that a reexamination, unlike an interference proceeding, does not involve a contest over patent ownership, as well as the fact that Congress has specifically charged the PTO with conducting reexamina-tions "with special dispatch," *see* 35 U.S.C. § 314(c) (2000). We do not believe that, under the facts of this case, ex-cluding compulsory production of testimony in inter partes reexamination proceedings raises a "serious consti-tutional problem[]." *See DeBartolo*, 485 U.S. at 575.

CONCLUSION

We hold that 35 U.S.C. § 24 only empowers a district court to issue subpoenas for use in a proceeding before the PTO if the PTO's regulations authorize parties to take depositions for use in that proceeding. We therefore hold that section 24 subpoenas are not available in inter partes reexamination proceedings.

**AFFIRMED**